UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD NATALE,

                    Plaintiff,

        v.                                              **DECISION AND ORDER**

                                                        17-CV-934S

ARIZONA PREMIUM FINANCE CO., INC.,

                    Defendant.

## I.      Introduction

This is a Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"), case in which Plaintiff alleges receiving over 100 telephone calls from Defendant to a cellphone he used.   Defendant questions whether Plaintiff rightfully possessed that cellphone to state this claim.

The telephone number at issue once was assigned to another person who incurred a debt to Defendant.   That person had authorized Defendant to contact him at that number.   Eventually, the number became reassigned to Plaintiff's girlfriend, Katrina James ("James"), on the cellphone used by Plaintiff.   Plaintiff lived with James when she subscribed with SafeLink for cellphone service under the Lifeline program, and she allowed Plaintiff to use that cellphone (Docket No. 25, Aff. of Katrina James ¶¶ 6-8). Nevertheless, Defendant proceeded to call the number to collect that debt.

In November 2016, that cellphone received calls from Defendant attempting to collect a debt from the person who once had that telephone number.   Plaintiff (and James) did not authorize receipt of calls and did not owe the claimed debt.

Plaintiff filed this action under the TCPA and 47 C.F.R. § 64.1200 (Docket No. 1, Compl.).  James is not a party in this action, although she is the accountholder for the cellphone.

Presently before this Court are (1) Defendant's Motion for Summary Judgment (Docket No. 22[1]) dismissing this action and (2) Plaintiff's Motion for Summary Judgment (Docket No. 26[2]).  For reasons stated below, Defendant's Motion for Summary Judgment (Docket No. 22) is denied and Plaintiff's Motion for Summary Judgment (Docket No. 26) is denied.

## II.    Background

### A.  Facts and Pleadings

In 2016, Plaintiff and James lived in an apartment at 1000 Kenmore Avenue, Apartment #10 for three years prior to 2019 and before then that same address, Apartment #5.  James later explained that they moved from Apartment #5 to Apartment #10 due to their issues in navigating stairs.  (Docket No. 31, Katrina James Decl. ¶¶ 3-4, Ex. A; see also Docket No. 28, Def. Atty. Decl. ¶ 5.)  In these moving papers, however, Plaintiff states he lived at apartments in 1004 Kenmore Avenue (Docket No. 25, Pl. Aff. ¶¶ 3, 7-8; Docket No. 26, Pl. Aff. ¶ 3; Docket No. 31, Pl. Reply Memo. at 2) with James

---

[1] In support of its Motion, Defendant submits its Statement of Facts with exhibits and Memorandum of Law, Docket No. 26; its Attorney's Reply Declaration with exhibit Docket No. 28.

Part of his opposition is contained in his Motion for Summary Judgment, Docket No. 30.  He also submits in opposition to Defendant's Motion his Affidavit with exhibits and Statement of Undisputed Facts in Response to Defendant's Rule 56 Statement of Facts, Docket No. 25.

[2] In support of his Summary Judgment motion, Plaintiff submits his Affidavit, the Affidavit of Katrina James, exhibits (including an audio recording of an example call, Docket No. 29), and Memorandum of Law Docket No. 26; and Plaintiff's Reply Memorandum with a second affidavit of Ms. James (with exhibits), Docket No. 31.

In opposition (in addition to its own Motion), Defendant submits its Memorandum of Law with exhibits, Docket No. 30

2

(Docket No. 25, James Aff. ¶ 3; Docket No. 26, James Aff. ¶ 3; Docket No. 31 James Aff. ¶ 3; Docket No. 31, Pl. Reply Memo. at 2).   The rental agreement Plaintiff and James executed for a tenancy beginning on July 1, 2016, however, is for 1000 Kenmore Avenue (Apartment #5) (Docket No. 31, James Aff. Ex. A) and the Section 8 program inspection inspected 1000 Kenmore Avenue, Apartment #5 (id. ¶ 8, Ex. B).   James' Tracfone cellphone account has her address at 1000 Kenmore Avenue, Apartment #5 (Docket No. 22, Def. Ex. A).  In their Amended Initial Disclosure of May 30, 2019, Plaintiff states that he and James lived at 1000 Kenmore Avenue Apartment #10 (Docket No. 26, Pl. Atty. ¶ 4, Ex. C).  Meanwhile, Plaintiff's original Initial Disclosure (Docket No. 28, Def. Ex. A) of February 13, 2018, stated Plaintiff's address was 1000 Kenmore Avenue Apartment #10.  The building number (while confusing) is not at issue.

At issue, however, is which apartment Plaintiff resided in November 2016 and whether he resided with James.  The parties dispute whether Plaintiff and James lived in the same apartment at 1000 (or 1004) Kenmore Avenue.  Defendant contends that Plaintiff lived at Apartment #10 (Docket No. 28, Def. Atty. Decl. ¶ 5, Ex. A), while James lived at Apartment #5 (id., ¶ 5).  Plaintiff disagrees stating that he and James shared a household (Docket No. 25, Pl. Response to Def. Statement ¶ 4; Docket No. 25, Pl. Memo. at 2, 4-5) at Apartment #10 (Docket No. 31, James Aff. ¶ 3) and thus could share James' SafeLink cellphone (Docket No. 25, Pl. Memo. at 4-5).   Defendant does not present evidence of James residing by herself at Apartment #5 or resided there while Plaintiff resided at Apartment #10.

Plaintiff alleges that from November 2, 2016, to July 14, 2017, he received 108 unwanted calls to James' cellphone (Docket No. 26, Pl. Statement ¶ 1; see Docket

No. 1, Compl. ¶ 15).  He claims that Defendant called the cell number multiple times a day (Docket No. 1, Compl. ¶¶ 15, 21).

Defendant answered (Docket No. 4).  After referral to Magistrate Judge H. Kenneth Schroeder (Docket No. 5), entry of the Case Management Order (Docket No. 8) and its amendments (Docket Nos. 14, 21), and granting Plaintiff's Motion to Compel (Docket Nos. 16 (motion), 20 (Order)), Defendant filed the present Motion for Summary Judgment (Docket No. 22) followed by Plaintiff's Motion for Summary Judgment (Docket No. 26).

B.  Motion for Summary Judgment

Comparing the Statements of Fact for both sides' motions (Docket Nos. 22, Def. Statement; 26, Pl. Statement) and their responses thereto (Docket Nos. 25, Pl. Response to Def's Statement; 30, Def's Response to Pl. Statement), the facts generally are not contested.  Factual disputes will be noted below.

The (redacted)[3] telephone number that is subject to this action is (716) ___-3641 (Docket No. 22, Def. Statement ¶ 1).  Defendant was provided this number by a borrower, Justin Wilson of Farnham and later Hamburg, New York (id. ¶ 2, Ex. B; Docket No. 26, Pl. Statement ¶ 4).   Wilson entered into an automobile insurance premium loan agreement in 2010 and 2014 with Defendant (Docket No. 22, Ex. B).  Wilson consented to have Defendant contact his cellular number, the subject telephone number (id., ¶ 3, Ex. B; see also Docket No. 25, Pl. Response to Def's Statement ¶ 3 (admission)).

According to the subpoenaed records from Tracfone, the wireless carrier for the subject telephone, James obtained activation on September 27, 2016 (Docket No. 22,

---

[3] This Court redacts the actual number, see Salerno v. Credit One Bank, N.A. No. 15CV516, 2020 WL 1558153, at *2, 3 (W.D.N.Y. Mar. 31, 2020) (Foschio, Mag. J.) (Report & Rec.) (in TCPA action, Court redacted telephone numbers to last four digits), adopted in part, rejected in part on other grounds, 2020 WL 4339219 (W.D.N.Y. July 28, 2020) (Sinatra, J.).

Def. Ex. A).   Neither side produced evidence when Wilson abandoned this number. Wireless service providers recycle cellphone numbers (see Docket No. 22, Def. Memo. at 2), see David Lazarus, "Service Providers Recycling Cell Phone Numbers is a Dirty Little Secret," SFGate, Feb. 3, 2006, www.sfgate.com/business/article/Service-providers-recycling-cell-phone-numbers-is-2505.php.

Disputed is whether, in November 2016 through July 2017, Plaintiff owned that telephone number.  Defendant contends that Plaintiff was not the owner of the subject telephone (Docket No. 22, Def. Statement ¶ 4) while Plaintiff denies this allegation, arguing that his girlfriend, James, was on the account but they shared household expenses and that under the Lifeline program only one such cellphone was allowed per household (Docket No. 25, Pl. Response to Def's Statement ¶ 4; Docket No. 26, Pl. Statement ¶ 5).   Both parties agree that, under the Lifeline program, a household is restricted to one phone benefit, even if more than one member of the household would qualify for the benefit (Docket No. 26, Pl. Statement ¶ 8; Docket No. 30, Def. Response to Pl's Statement ¶ 8).   Plaintiff argues that the program anticipates that "persons in the household would share the benefit" (Docket No. 26, Pl. Statement ¶ 9); Defendant denies this (Docket No. 30, Def. Response to Pl's Statement ¶ 9).

Both sides agree that Katrina James is the accountholder for the cellphone ending in -3641 (Docket No. 22, Def. Statement ¶ 5; Docket No. 25, Pl. Response to Def's Statement ¶ 5; Docket No. 26, Pl. Statement ¶ 5; Docket No. 30, Def. Response to Pl's Statement ¶ 5 (admitting James as subscriber but denying knowledge of her relationship with Plaintiff)).   Plaintiff, however, claims that the -3641 number is the sole number he used (Docket No. 26, Pl. Statement ¶ 10); Defendant concedes Plaintiff alleged this but

has no independent knowledge or evidence to corroborate or dispute it (Docket No. 30, Def. Response to Pls' Statement ¶ 10).

Plaintiff contends that he lived with James for the past three years and together they constituted a household (Docket No. 26, Pl. Statement ¶¶ 6, 7).  Defendant disputes both their alleged living arrangement and whether they formed a "household" (Docket No. 30, Def. Response to Pl's Statement ¶¶ 6, 7).

Defendant contends that, for James to receive SafeLink service, she had to fill out an application (Docket No. 22, Def. Statement ¶ 8, Ex. D; see also Docket No. 26, Pl. Ex. H) which conditioned the use of the cellphone.  Plaintiff counters that this assumes that James filled out an application (Docket No. 25, Pl. Response to Def's Statement ¶ 8).  Plaintiff does cite to the Lifeline application for its policies (Docket No. 26, Pl. Statement ¶¶ 7-9, Ex. H).

Defendant next argues that James was advised that the benefit of the SafeLink/Lifeline cellphone service was non-transferable, and a transfer was in violation of 47 C.F.R. §§ 54.401, 54.410 (Docket No. 22, Def. Statement ¶ 9).  Plaintiff disagrees, again on the assumption James applied for SafeLink services and arguing that the SafeLink services extended to an entire household (Docket No. 25, Pl. Response to Def's Statement ¶ 9).

According to Plaintiff, on November 2, 2016, he began receiving calls on the cellphone ending -3641 for an alleged outstanding balance on an automobile insurance policy.  He contends that a total of 108 calls were made by Defendant to Plaintiff from November 2, 2016, through July 14, 2017.  (Docket No. 26, Pl. Statement ¶¶ 1, 2.) Defendant disputes this, arguing that there are issues of fact when Plaintiff began to

receive calls (since Plaintiff had not established when he had possession of the cellphone) and the number of calls he received (Docket No. 30, Def. Response to Pl's Statement ¶ 1).  These calls were intended for Justin Wilson and not for Plaintiff (Docket No. 26, Pl. Statement ¶ 3) or James.

Defendant admits to the remainder of Plaintiff's Statements of Fact (Docket No. 30, Def. Response to Pl's Statement ¶¶ 11-19), that an automated voice would call the -3641 cellphone, either when Plaintiff answered or if a voice message was left (Docket No. 26, Pl. Statement ¶¶ 11-12), that these calls were made by Defendant through an automatic dialing system (id. ¶¶ 13, 15), and that none of the calls were made manually (id. ¶¶ 14, 17).  Neither Plaintiff nor James provided the -3641 number to Defendant to authorize calling their cellphone (id. ¶ 18).

In production upon a subpoena of the wireless carrier, Plaintiff produced cellphone records that he identified as 29 calls from November 10, 2016, through October 16, 2017, that he received from Defendant (Docket No. 30, Def. Ex. A), although the calls were not highlighted within the recorded logs.

Plaintiff claims that there was a total of 108 calls, based upon Defendant's produced call logs (Docket No. 26, Ex. E).  Those logs are 108 pages long, from November 2, 2016, through July 14, 2017, listing redacted telephone numbers by date and time.  Each log page contained at least one entry for calls to a telephone number ending in -3641, but there was no identifier by either side that this number is the subject number.  Assuming these entries are for the same telephone number, from this Court's count of the -3641 entries in the produced log, there were 108 such entries (id.).  The log

indicates calls to -3641 for two to five times a day, with entries for one day at intervals of about seven to ten days (id.).

Defendant argues that Plaintiff was not entitled to use the SafeLink phone to assert a TCPA action (Docket No. 22, Def. Memo.).

Plaintiff moves for summary judgment, asserting that the elements for a TCPA action were met (Docket No. 26, Pl. Memo.)

After Defendant moved for summary judgment (Docket No. 22), this Court ordered responses thereto to be due September 3, 2019, and reply by September 17, 2019 (Docket No. 23).   Plaintiff's deadline to file his Motion for Summary Judgment was extended (cf. Docket No. 21) to September 3, 2019 (Docket No. 24).  After Plaintiff filed his Motion (Docket No. 26), responses to this motion were due by October 2, 2019, and any reply by October 16, 2019 (Docket No. 27).  Both motions then were fully briefed and deemed submitted without oral argument.

### III.   Discussion

A.  Applicable Standards

1.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" only if it "might affect the outcome of the suit under governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," id.  In determining whether a genuine

dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted). Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82, 83 (2d Cir. 2004) (citation omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323). The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to

the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant. Ford, supra, 316 F.3d at 354.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2). The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Absent such an opposing statement, the facts alleged by the movant are deemed admitted. Each statement of material fact is to contain citations to admissible

evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

### 2.   Telephone Consumer Protection Act

The TCPA made it unlawful for any person within the United States to make any call "using any automatic telephone dialing system or an artificial or prerecorded voice" to any cellular telephone service unless it is solely to collect a debt owed to or guaranteed by the United States, 47 U.S.C. § 227(b)(1)(A)(iii) (No. 26, Pl. Memo. at 2).  Calls are actionable if they are not for an emergency or made with the prior express consent of the called party, id. § 227(b)(1)(A) (id.).

### 3.   Lifeline Program

The wireless carrier for the subject cellphone is SafeLink Wireless (Docket No. 22, Def. Statement ¶ 6; Docket No. 26, Pl. Statement ¶ 5 (admission on this point); Docket No. 30, Def. Response to Pl's Statement ¶ 5) and that carrier participates in the Lifeline program (Docket No. 22, Def. Statement ¶ 7), a brand of TracFone Wireless (Docket No. 22, Ex. C; see id. Ex. A, subpoena to SafeLink Wireless c/o TracFone Wireless).  This is a program that provides cellphone service to low income individuals and households, 47 C.F.R. § 54.409 (Docket No. 26, Pl. Statement ¶ 5; Docket No. 30, Def. Response to Pl's Statement ¶ 5 (admission on this point); see Docket No. 22, Ex. C, SafeLink terms and conditions at 1, Ex. D, Lifeline application).  Persons eligible for the Lifeline program must be participants in state or federal support programs or meet "certain income requirements based upon the Income Poverty Guidelines as defined by the US Government" (Docket No. 22, Ex. C).

As noted by Judge Stefan Underhill in Schipke v. TracFone Wireless, Inc., 146 F. Supp.3d 455, 457 (D. Conn. 2015),

> "The Lifeline federal benefit program—conceived as means of ensuring the availability of basic telecommunications services for all Americans—provides subsidized (and sometimes free) telephone service to qualifying individuals and families with low incomes.  Lifeline is administered by the Universal Service Administrative Company and overseen by the Federal Communications Commission ('FCC'), but the telephone service itself (which may be landline service or, since 2005, cellphone service) is provided by various third parties.  TracFone is one such wireless provider that participates in Lifeline as an 'eligible telecommunications carrier' ('ETC') with its Safelink brand."

"Lifeline is a non-transferable benefit and the subscriber may not transfer his or her benefit to any other person," 47 C.F.R. § 54.410(d)(1)(vi)) (Docket No. 28, Def. Atty. Decl. ¶ 4; Docket No. 22, Def. Memo. at 2).  The SafeLink terms and conditions also precluded the customer from selling, renting, or giving away or allowing any other person to use the cellphone (id.).

The Lifeline service also is limited to one per household, 47 C.F.R. § 54.410(d)(ii); see Schipke, supra, 146 F. Supp. 3d at 457 (see Docket No. 22, Ex. D; Docket No. 26, Pl. Ex. H, Lifeline application), with a "household" defined "as any individual or group of individuals who live together at the same address and share income and expenses," id. § 54.410(d)(iii).  A household is not allowed to receive Lifeline services from multiple sources, id. § 54.410(d)(iv).

B.  Contentions

1.  Defendant

Defendant argues that Plaintiff did not lawfully possess the SafeLink cellphone, because James could not lawfully transfer the cellphone to Plaintiff, for Plaintiff to allege his claim under the TCPA (Docket No. 22, Def. Memo. at 4-7; Docket No. 30, Def. Memo.

at 4-9).   Defendant contends that James permitted Plaintiff to use that cellphone in violation of federal law (Docket No. 30, Def. Memo. at 4-9; Docket No. 28, Def. Atty. Decl. ¶ 3).   Conceding that Plaintiff and James were in the same household and that the SafeLink benefit was limited to one household, Defendant argues that there was no "'household' exception to the non-transferability of the benefit," and precluding transfer of SafeLink cellphones even within a household, concluding that James attempted to transfer that cellphone to Plaintiff (Docket No. 28, Def. Atty. Decl. ¶ 4).   Defendant disputes whether Plaintiff and James were in the same household (whether they were in the same apartment on Kenmore Avenue) or, if so, whether they were in that household in November 2016 when the calls were made (id. ¶ 5).

In further opposition to Plaintiff's Motion, Defendant raises as an issue of fact whether it is properly held liable for these calls given that the prior owner of the cellphone number had consented to being contacted on the cellphone (Docket No. 30, Def. Memo. at 1).   Defendant also questions the number of calls to the cellphone, raising a material issue of fact (id. at 10-11).

### 2.  Plaintiff

Plaintiff claims that he is a "called party" under the TCPA (Docket No. 26, Pl. Memo. at 3) and that he (and James) did not consent to Defendant calling the SafeLink cellphone (id. at 3-4).   He alleges that Defendant uses an in-house dialer that is an automatic telephone dialing system unlawful under TCPA, In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991; 30 F.C.C. Rcd. 7961, 8000-01 (2015) (Docket No. 25, Pl. Memo. at 4-5).   Defendant played pre-recorded messages (Docket No. 29, Pl. Ex. A, example of recording) every time it called Plaintiff from a script which

left no discretion, and the same message was left for every call (id. at 6).  Plaintiff claims statutory damages of $500 for each violative call, or $54,000 for the 108 alleged calls he received from November 2, 2016, through July 14, 2017 (Docket No. 26, Pl. Memo. at 6-7; see Docket No. Compl., at page 4 of 4, WHEREFORE Cl. (b), 47 U.S.C. § 227(b)(3)(B)).

Defendant responds that there are issues of fact when Plaintiff received telephone calls from Defendant and the number of calls (Docket No. 30, Def. Response to Pl. Statement ¶ 1).  Defendant does not contest the other elements for a TCPA claim alleged by Plaintiff.

### C.  Ownership of Cellphone and Lifeline

Both motions turn on whether Plaintiff was authorized to use the cellphone that Defendant called.  Defendant characterizes James' action in allowing Plaintiff to use the SafeLink cellphone as a transfer and (according to Defendant) not allowed under the Federal Communications Commission regulations and Lifeline program guidelines for the SafeLink phone.  As Plaintiff contends, James shared use of the cellphone within a household.

Defendant's response to Plaintiff's Motion for Summary Judgment argues the threshold issue that Plaintiff could not legally use the cellphone that was allegedly called (Docket No. 30, Def. Memo. at 4-9, 10).  Defendant emphasized that the SafeLink phone could not be sold or given away and that Plaintiff and James were not in the same household (Docket No. 28, Def. Atty. Decl. ¶ 5; Docket No. 22, Def. Memo. at 2). Defendant cites to the initial disclosure that Plaintiff lived at Apartment #10 (Docket

No. 28, Def. Atty. Decl. ¶ 5, Ex. A) while James lived at Apartment #5 (id.; Docket No. 22, Ex. A, Tracfone Subscriber Information).

Plaintiff explains that he and James lived at Apartment #5 and then together moved to Apartment #10 at Kenmore Avenue apartment to avoid climbing stairs (Docket No. 31, Pl. Reply at 2; id., James Aff. ¶¶ 2-5; cf. Docket No. 28, Def. Atty. Decl. ¶ 5). They lived at Apartment #5 when James applied for a SafeLink phone (Docket No. 31, James Aff. ¶ 6) and in November 2016 (id. ¶ 7, Ex. A) when Plaintiff was first called by Defendant. They allege that they shared resources and expenses (Docket No. 25, Pl. Aff. ¶¶ 3-5; id., James Aff. ¶¶ 3-5).

The record establishes that Plaintiff and James lived together at Apartment#10 and then Apartment#5. While Defendant denies that James and Plaintiff shared resources and expenses, Defendant offers no proof that they had separate incomes and expenses. James and Plaintiff formed a household.

The SafeLink/Lifeline phone is for a household and intended to be shared within that household (Docket No. 25, Pl. Memo. at 4). According to the application for Lifeline program, if an applicant qualifies, "your household can get Lifeline for phone or internet service, but not both" (Docket No. 22, Def. Ex. D, Application Form at 1; see also Docket No. 26, Pl. Ex. H, Application Form at 1). "If you get Lifeline for phone service, you can get the benefit for one mobile phone or one home phone, but not both" (Docket No. 22, Def. Ex. D, Application Form at 1; see also Docket No. 26, Pl. Ex. H, Application Form at 1). The application then provides that "you are only allowed to get one Lifeline benefit per household, **not per person**. If more than one person in your household gets Lifeline, you are breaking the FCC's rules and will lose your benefit" (Docket No. 22, Def. Ex. D,

Application Form at 1 (emphasis in original); see also Docket No. 26, Pl. Ex. H, Application Form at 1).  The application defines a "household" as "a group of persons who live together and share income and expenses (even if they are not related to each other)" (Docket No. 22, Def. Ex. D, at 1; see also Docket No. 26, Pl. Ex. H, Application Form at 1).  In giving examples of "households" later in the application, Lifeline stated that a married couple who live together are a household and "they must share one Lifeline benefit" and "an adult who lives with friends or family who financially support him/her are one household.  They must share one Lifeline benefit" (Docket No. 22, Def. Ex. D, Household Worksheet, at 1; see also Docket No. 26, Pl. Ex. H, Household Worksheet, at 1).

The program's regulation restricts the program phone to a single provider and a single phone even if multiple members of the household are individually eligible for the benefit (see Docket No. 22, Def. Ex. C, at 1 of 25; id., Def. Ex. D, Household Worksheet at 3.  In a "can you apply" worksheet, if applicant lives in household with another person who already gets the benefit, that applicant is not eligible for the benefit because only "one Lifeline discount per household, not per person" (Docket No. 22, Def. Ex. D, Household Worksheet at 3).

Defendant here has defined too narrowly "household" to be merely the named accountholder.  The regulations Defendant cites (Docket No. 28, Def. Atty. Decl. ¶ 4; Docket No. 22, Def. Ex. C, at 2, 7 of 25) 47 C.F.R. § 54.410(d)(1)(iv), prohibit more permanent transfers of the Lifeline/SafeLink cellphones or those from a household that is prohibited than the use of the cellphone within a household.  The program regulations also prohibit "the unauthorized unlocking or resale of your SafeLink Product" constituting

a violation of the use agreement (Docket No. 22, Def. Ex. C, at page 7 of 25).  These regulations do not prohibit borrowing or using a cellphone within a household.  The intention of the transfer prohibition is to not have the discounted, federally subsidized phones transferred, given, sold, or lent to ineligible persons or to persons not financially related to the accountholder.

Defendant argues that James unlawfully transferred the cellphone to Plaintiff (see id.), but this argument fails.  There was no transfer here, but James and Plaintiff are sharing the phone in a common household.  A transfer occurs when the cellphone leaves the household or given to person not within a household.  The Lifeline/SafeLink regulations only preclude transfer of cellphones outside of a household.  These regulations essentially require sharing within a household; for example, there are not supposed to be multiple SafeLink cellphones in a household despite multiple persons otherwise are eligible.

Defendant here does not dispute that Plaintiff and James shared resources and expenses but contests generally that they actually lived together.  Defendant is not arguing that Plaintiff and James are merely roommates and did not share money or expenses (cf. Docket No. 22, Def. Ex. D, Household Worksheet at 1; Docket No. 26, Pl. Ex. H, Household Worksheet, at 1).  Defendant also is not arguing that Plaintiff's income and expenses is an issue of fact.  James and Plaintiff constitute a "household" under the SafeLink/Lifeline program terms.  The only factual issue Defendant raises is whether James and Plaintiff occupy the same apartment; as held above, James and Plaintiff lived in the same apartment and thus constitute a household.

Since only one person per household can have a SafeLink cellphone, James applied for the account.  The cellphone here is the household cellphone for Plaintiff and James.  Perhaps a cleaner way to pursue this action would have been to have James also sue for the alleged calls to the cellphone on her account.  Such pleading is not required under the TCPA.  Actionable conduct is the call to the cellphone number, 47 U.S.C. § 227(b)(1)(A)(iii), regardless who owned the account or possessed the cellphone.  An accountholder does not need to be a party in a TCPA action for unwanted automated calls to that phone where, as here, the phone was used by others within the accountholder's household.  For the exception under § 227 for the prior express consent of the "called party," the "called party" is the person who receive the call, <u>Thomas v. Dun & Bradstreet Credibility Corp.</u>, 100 F. Supp.3d 937, 942-44 (C.D. Cal. 2015); <u>see McCaskill v. Navient Solutions, Inc.</u>, 178 F. Supp.3d 1281, 1290 (M.D. Fla. 2016) (mother held to be "called party" for family plan for cell service and defendant intended to call daughter to collect a debt).

Defendant here, however, is not claiming James (or Plaintiff) consented to calls from Defendant.  The prior holder of the cellphone, Justin Wilson, consented.  Defendant is not arguing that Wilson is the called party; Defendant implicitly contends that if anyone is the called party it is non-party James.  Defendant bases this on its interpretation of the Lifeline program and Federal Communications Commission regulations.

Plaintiff and James are in the same household and the cellphone with the -3641 number is the cellphone for their household.  Plaintiff thus is the "called party" for consent purposes but Plaintiff never consented to Defendant's calls.

18

Defendant's Motion for Summary Judgment (Docket No. 22), and its objections to Plaintiff's contrary Motion for Summary Judgment (Docket No. 26), on the grounds that Plaintiff could not lawfully state a TCPA claim is denied.

D.  Number of Telephone Calls

Plaintiff established the elements for violations of TCPA, that he received calls from Defendant to a cellphone from a person in the United States that were not for an emergency purpose or for collection of a United States Government debt (Docket No. 26, Pl. Statement ¶¶ 2-4, 11-14, 16-18; see Docket No. 26, Pl. Memo. at 2-3).  The calls here allegedly were for an automobile insurance policy (Docket No. 26, Pl. Statement ¶ 1), not a federal debt or a debt secured by the United States, and the debt was not owed by Plaintiff.  These calls were made to Plaintiff without his express prior consent to receive calls at that cellphone number (see Docket No. 26, Pl. Statement ¶ 18).  Defendant admits that automatic dialer and prerecorded voice were used (Docket No. 30, Def's Response to Pl. Statement ¶¶ 15-17).

Defendant alternatively disputes the number of calls to the cellphone, arguing that Plaintiff's summary judgment motion should be denied because of this material issue of fact (Docket No. 30, Def. Response to Pl. Statement of Facts ¶ 1; id., Def. Memo. at 10). This Court agrees; the number of Defendant's calls to Plaintiff's cellphone raises an issue of fact.

In conclusory fashion Plaintiff claims that 108 calls were made to his cellphone, citing to Defendant's call log (Docket No. 26, Pl. Atty. Affirm. ¶ 6, Ex. E; see Docket No. 30, Def. Memo. at 10) as proof.

Defendant argues that the call log is not an accurate count of the number of calls to a telephone number.  Defendant counters that the proper measure is the records from Plaintiff's telephone service provider of calls that connected, rather than any record of attempts to call (Docket No. 30, Def. Memo. at 10).  Plaintiff's service provider, SafeLink, produced documents (Docket No. 30, Def. Ex. A; see Docket No. 30, Def. Memo. at 10) for 29 connected calls from Defendant between November 10, 2016, to October 16, 2017, months beyond when Plaintiff alleged, he was called.  Defendant concludes that at the most Plaintiff could claim only those 29 calls (Docket No. 30, Def. Memo. at 10).

This Court reviewed the produced records from SafeLink, but neither side pinpointed Defendant's telephone number to identify the offending, connected calls from the 89 pages of produced SafeLink logs with each log page with over 20 entries of calls made and received to that cellphone.  While Defendant concedes in its motion that it made 29 calls to the subject cellphone number, the record presented does not identify a particular call.

This Court also reviewed the log of Defendant's calls (Docket No. 26, Ex. E). Defendant produced redacted telephone numbers Defendant called on various days between November 2, 2016, through July 14, 2017.  There are entries ending with the redacted telephone number -3641 on at least once on each of the 108 pages of the exhibit.  What is not known, however, is if that redacted number in each of the found entries is Plaintiff's cellphone number, for it is possible that the entries could be for different telephone number ending with those four digits.

These gaps in the record manifest a material issue of fact on the scope of Defendant's violations of Plaintiff's rights under the TCPA.

E.  Consent for Calls

Defendant contends that it had consent from Wilson, the former accountholder for the subject cellphone number, to allow for contact by that number (Docket No. 22, Def. Statement ¶ 3, Ex. B; Docket No. 25, Pl. Response to Def's Statement ¶ 3).  Unbeknownst to Defendant, the cellphone number was reassigned to James (Docket No. 30, Def. Memo. at 2; see also Docket No. 22, Pl. Memo. at 2).  Plaintiff, however, denies granting consent to receive calls and denied owing Defendant a debt that necessitated Defendant's calls.

Issues not fully addressed by the parties are the effect of the consent of the former owner on calls made (by mistake) to Plaintiff and James' cellphone; whether Defendant has a defense for mistakenly dialing what later became the wrong number, but cf. ACA Int'l v. FCC, 885 F.3d 687 (D.C. Cir. 2018) (Federal Communications Commission could permissibly interpret "called party" in 47 U.S.C. § 227 to refer to current subscriber and extinguish any consent given by prior subscriber); Simmons v. Charter Commc'ns, Inc., 222 F. Supp. 3d 121, 134-36 (D. Conn. 2016) (defendant claiming regulatory safe harbor in the do-not-call registry for calls made in error, 47 C.F.R. § 64.1200(c)(2)(i)).  Defendant has not invoked the safe harbor for the error of calling a reassigned cellphone number.

F.  Motion Practice

Finally, the parties critique each other on how they submitted their moving papers. Plaintiff objects to Defendant attaching exhibits to its Motion for Summary Judgment without authenticating affidavit (Docket No. 25, Pl. Memo. at 2).  Defendant retorts that this is without merit; since Defendant had no facts within its knowledge that it could submit

an affidavit, it attached the exhibits to its Statement of Facts (Docket No. 28, Def. Atty. Decl. ¶ 1).

While Plaintiff raises this objection, he still cites to Defendant's produced exhibits (Docket No. 25, Pl. Memo. at 4 (citing Exhibits C, D to Defendant's Motion)) regarding the SafeLink/Lifeline program without questioning its authentication.

Resolution of Defendant's Motion (or Plaintiff's own Motion), however, does not turn upon this evidentiary issue.  This Court's Local Civil Rule 56(a)(1) requires facts stated in a movant's Statement of Fact be supported by citation to evidence in admissible form.  It is true that this Court's Local Civil Rule 7(a)(3) (cf. Docket No. 28, Def. Atty. Decl. ¶ 2) require affidavits to recite only "factual and procedural background relevant to the motion it supports."  Defense counsel could have attached a covering affidavit for these exhibits given their familiarity with the procedural background of this case.

Despite Plaintiff's objection, he does not contest the validity of Defendant's exhibits.  Thus, this is not grounds for denying Defendant's Motion.

## IV.    Conclusion

Defendant's Motion for Summary Judgment (Docket No. 22) is denied; Plaintiff has the authority to assert his TCPA claim despite not being the formal accountholder for the cellphone that Defendant called.  Plaintiff was in the household of the accountholder and authorized to use the cellphone from that accountholder.  He was the primary user of the cellphone and answered each time Defendant called.

Plaintiff's Motion for Summary Judgment (Docket No. 26) is denied because Defendant raises material issues of fact on the number of calls Plaintiff received and whether there was prior (bur now erroneous) consent.

Despite Defendant's denied opt-out motion (Docket No. 9, <u>denied</u>, Docket No. 10) from alternative dispute resolution and the mediation session with Bruce Zeftel (Docket No. 12), following resolution of these motions, this case should take another attempt at alternative resolution prior to trial preparation and trial.  Following disposition of these motions, the parties are directed to contact Mr. Zeftel to schedule a further mediation session.  Referral for mediation will continue until November 1, 2021.  This Court then will hold a status conference 60 days from date of this Order, on May __, 2021/{**Genevieve for date**} on the status of the mediation, this case, and the parties' preparation for trial.

## V.      Orders

IT HEREBY IS ORDERED, that Defendant's Motion (Docket No. 22) for Summary Judgment is DENIED.

FURTHER, that Plaintiff's Motion (Docket No. 26) for Summary Judgment is DENIED, consistent with this decision.

FURTHER, that this case is REFERRED for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall re-engage with Mediator Bruce Zeftel and participate in the mediation session as scheduled by Mr. Zeftel.

FURTHER, that within 10 days of the mediation session and any subsequent sessions, the mediator shall file a Mediation Certification setting forth the progress of mediation.

FURTHER, that the mediation process shall be completed by November 1, 2021.

FURTHER, that the parties shall timely comply with all relevant requirements of

the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that the parties shall appear before this Court on Wednesday, May 26, 2021, at 9:00 AM, to report on the status of this case if it is not sooner resolved through mediation.

SO ORDERED.


Dated:      March 18, 2021
            Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge